UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CRIMINAL ACTION NO. 4:04CR-23-M

UNITED STATES OF AMERICA                                                                    PLAINTIFF

VS.

CHARLES L. BENNETT                                                                             DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Defendant, Charles L. Bennett, to suppress evidence seized as a result of the search of Bennett's residence [DN 28] and a motion by Defendant to suppress statements made to the police [DN 27]. On November 1, 2005, a suppression hearing was held. There appeared James H. Barr for the United States and Scott Wendelsdorf, counsel for Defendant, Charles Bennett. At the suppression hearing, the Defendant withdrew his motion to suppress the statements made to police. Defendant filed a supplemental motion to suppress the evidence [DN 39] and the United States filed a response [DN 40]. Fully briefed, these matters are ripe for decision.

**Background**

On April 13, 2003, Kentucky State Police Trooper Bobby Winters filed an application for a search warrant for the residence of Charles Bennett located in St. Charles, Hopkins County, Kentucky. Trooper Winters submitted an affidavit in support of the application for a warrant in which he stated that he believed that controlled substances, materials used to manufacture or distribute methamphetamine or controlled substances, drug paraphernalia,

or drug records could be found on the premises. As the basis for this belief, the affiant stated that

> On the 13th day of April, 2003, at approximately 2 p.m., affiant received information from: a joint operation conducted by KSP and Christian County Sheriff's Office working with a confidential informant who has provided reliable information concerning drug activities in the past. This informant was with "Tinker" Barnett on April 11, 2003 when Barnett purchased items to make or cook methamphetamine. "Tinker" Barnett told the informant that he was to take the materials to "Buddy" Bennett's address on Cal Hamby in St. Charles, Kentucky. The informant has seen Bennett and Barnett "cooking" methamphetamine in the recent past as late as this week. The informant was to come to Bennett's house April 13 or April 14, 2003 to get an "eightball" of methamphetamine as soon as Bennett and Barnett got this batch "cooked." The informant told officers that Bennett was picking up anhydrous ammonia on April 13, 2003 to bring to his house to "cook." Bennett is on bond for felony methamphetamine charges in the Hopkins Circuit Court.

A search warrant was issued on the same day authorizing the search of the residence. Upon execution of the search, the police found a sawed-off shotgun and explosive materials.

Defendant now challenges the lawfulness of the police search of his residence arguing that (1) while the challenged search was pursuant to a warrant, said warrant was issued without probable cause supported by oath or affirmation as required by the Fourth Amendment to the Constitution of the United States; (2) the purported affidavit contains false statements made knowingly and intentionally or with reckless disregard for the truth; (3) the affidavit is insufficient to establish the confidential informant's reliability and therefore probable cause is lacking; and (4) the search warrant was executed without the officers knocking or otherwise announcing their official duty or intentions to execute a warrant.

**Discussion**

The Fourth Amendment states that "no warrants shall issue but upon probable cause, supported by oath or affirmation . . . ." U.S. Const. amend IV. Probable cause for the issuance of a search warrant is defined in terms of whether the affidavit sets out facts and circumstances which indicate "a fair probability that evidence of a crime will be located on the premises of the proposed search." United States v. Bowling, 900 F.2d 926, 930 (6th Cir.), cert. denied, 498 U.S. 837 (1990). See also United States v. Finch, 998 F.2d 349, 352 (6th Cir. 1993); United States v. Frazier, 423 F.3d 526 (6th Cir. 2005). Probable cause is determined by examining the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 238 (1983). A magistrate judge's probable cause determination should be made in a "practical, common-sense" fashion and reviewed in the same manner. United States v. Weaver, 99 F.3d 1372, 1377 (6th Cir. 1996). A magistrate's determination should not be set aside unless arbitrarily exercised. Id. at 1376.

*A. Lost Affidavit*

Defendant argues that the search warrant was not supported by oath or affirmation because there is no affidavit accompanying the search warrant located in the Hopkins County District Court file. The Government responds that the original affidavit was retained by Judge Logan Calvert. The Government submitted a copy of the affidavit in question at the hearing. Specifically, Trooper Winters testified that he signed the original affidavit, the original affidavit was left with Judge Calvert, and Trooper Winters retained an unsigned copy. While Trooper Winters did not have a specific recollection of signing the affidavit,

3

Trooper Winters testified that it was Judge Calvert's routine practice to swear him as to the truth of his allegations before Judge Calvert issues a search warrant.

The absence of an affidavit to support an executed search warrant does not invalidate it when "other evidence [can] be presented to establish the fact that an affidavit was presented, as well as its contents." United States v. Lambert, 887 F.2d 1568, 1571-72 (11th Cir. 1989); United States v. Gibbs, 421 F.3d 352 (5th Cir. 2005); United States v. Garey, 2002 WL 826408 (S.D. Ind. April 11, 2002), aff'd, 329 F.3d 573 (7th Cir. 2003). See also United States v. Posey, 501 F.2d 998 (6th Cir. 1974). In the present case, the United States presented a copy of the original affidavit and Trooper Winters testified to its preparation and presentation to Judge Calvert. The Court accepts the testimony of Trooper Winters and finds that the search warrant was supported by a signed and sworn affidavit.[1]

### *B. Franks Hearing Request*

Defendant contends that a *Franks* hearing is warranted because statements contained in the affidavit of Trooper Winters are false. Specifically, Defendant states that Calvin "Tinker" Barnett told the investigator for the Federal Defender that he never told anyone that he and the Defendant were cooking or manufacturing methamphetamine or arranged to sell anyone an "eightball" from the Defendant's house.

---

[1] The Defendant argues that the search warrant was faxed to Judge Calvert at 2:15 p.m., only fifteen minutes after Trooper Winters received information from his confidential informant. However, Trooper Winters testified at the hearing that the only explanation he could think of for the existence of the Earlington Police Department's fax number at the top of the search warrant was that the Commonwealth's Attorney had the search warrant form faxed to him from the Earlington Police Department. The Court credits the testimony of Trooper Winters that he personally delivered the search warrant and affidavit to Judge Calvert.

4

In Franks v. Delaware, 438 U.S. 154 (1978), the United States Supreme Court recognized a defendant's right to challenge the sufficiency of an executed search warrant. Under Franks, the Defendant is entitled to an evidentiary hearing on the veracity of the statements in the affidavit

> if and only if (1) there is a substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false *and* (2) a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set to one side.

United States v. Atkin, 107 F.3d 1213, 1216-1217 (6th Cir. 1997)(quoting United States v. Campbell, 878 F.2d 170, 171 (6th Cir.), cert. denied, 493 U.S. 894 (1989)).

"The intentionally or recklessly false statement must be made by the affiant [himself], not the non-governmental informant." United States v. Rodriguez-Suazo, 346 F.3d 637, 648 (6th Cir. 2003). Thus, the Defendant's attack on the veracity of the confidential informant's statements would be insufficient to meet his burden for a *Franks* evidentiary hearing without a substantial showing that the affiant's statements were intentionally or recklessly false. Id.; United States v. Giacalone, 853 F.2d 470, 477 (6th Cir. 1988), cert. denied, 488 U.S. 910 (1988). The Defendant has provided no evidence that Trooper Winters intentionally or recklessly misrepresented information supplied by the confidential informant in order to secure the search warrant. Furthermore, in as much as the Defendant challenges the existence of the confidential informant, the Defendant has failed to put forth any evidence by affidavit or otherwise that Trooper Winters fabricated the confidential informant. See Franks, 438 U.S. at 171 ("Affidavits or sworn or otherwise reliable statements of witnesses

5

should be furnished, or their absence satisfactorily explained." Id.).

Therefore, Defendant has failed to make the required "substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false" to warrant a *Franks* hearing.

*C. Probable Cause*

In evaluating whether probable cause exists for issuing a search warrant, a judicial officer may rely on hearsay evidence. United States v. Helton, 314 F.3d 812, 819 (6th Cir. 2003). When confronted with hearsay information from a confidential informant, a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying the hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Id. (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). In other words, while an affidavit must state facts supporting an independent judicial determination that the informant is reliable, "those facts need not take any particular form." United States v. McCraven, 401 F.3d 693, 697 (6th Cir.), cert. denied, 74 USLW 3288 (2005)(citing United States v. Allen, 211 F.3d 970, 975-976 (6th Cir.), cert. denied, 531 U.S. 907 (2000)). As recognized by the Sixth Circuit, the affidavit "could state that police corroborated significant parts of the informant's story . . . [o]r the affiant could attest 'with some detail' that the informant provided reliable information in the past." Id. (citing Allen, 211 F.3d at 976). "Or there

could be other indicia of the informant's reliability, such as a detailed description of what the informant observed first-hand, or the willingness of the informant to reveal his or her name." Id.  Additionally, another indication of veracity and reliability is if in the process of implicating a defendant, the informant makes "statements against his own penal interest." United States v. Black, 2001 WL 427769, *4 (6th Cir.)("We think that such statements are inherently more truthful and reliable than statements which do not implicate the informant." Id. at *4), cert. denied, 534 U.S. 891 (2001).

With this case law as guidance, and based upon the information contained in the four corners of the affidavit, the Court concludes that the requisite "fair probability" that contraband could be found at the Defendant's residence was not established; and therefore, probable cause did not exist for the issuance of the search warrant.

The affidavit fails to provide sufficient facts to support an independent judicial determination that the unnamed informant was reliable. See McCraven, 401 F.3d 693; Allen, 211 F.3d 970; United States v. Woosley, 361 F.3d 924, 927 (6th Cir. 2004).  "*Allen* . . . contemplates attestation 'with some detail' that the informant provided reliable information in previous investigations." McCraven, 401 F.3d at 697 (citing Allen, 211 F.3d at 976). There are no averments about the length of the relationship between Trooper Winters and the informant; there are no averments about the nature of the information provided by the informant in the past; and there is not a suggestion that Trooper Winters disclosed the informant's true identity to the issuing judge. See McCraven, 401 F.3d at 697; United States v. Frazier, 423 F.3d 526, 532 (6th Cir. 2005).  Thus, the averment in Trooper Winters's

affidavit regarding the informant's reliability – "provided reliable information concerning drug activities in the past" – is too general to support the issuance of a warrant absent additional indicia of reliability. McCraven, 401 F.3d at 698.

The affidavit does not state that Trooper Winters corroborated significant parts of the informant's story. See Frazier, 423 F.3d at 532 ("[I]n the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration."). Trooper Winters indicated only that Bennett and Barnett were known methamphetamine "cookers" and have been the subject of an ongoing multi-jurisdictional investigation. This information is insufficient to corroborate the confidential informant's statements.

The Government relies heavily on United States v. Woosley, 361 F.3d 924 (6th Cir. 2004), in which the Sixth Circuit held that a warrant authorizing the search of a defendant's business was supported by probable cause. In Woosley, the Defendant complained that the affidavit did not contain sufficient information regarding the confidential informant to make an independent evaluation of probable cause. The affidavit in Woosley stated that:

> [a] confidential informant whom [sic] is known to the affiant to be credible and reliable, who has provided accurate information in the past which has been shown to be truthful and reliable. This informant stated to the affiant that on [August 15, 2001] they observed approximately five pounds of processed marijuana under the desk of the Owner Rodney Woosley. Also present were two firearms which they described as Handguns possibly 9MM. . . .
>
> Previously the affiant received information from numerous independent informants information which indicates that Drug Trafficking is occurring at this location. The affiant also has information that marijuana is packaged in parts boxes specifically alternator boxes.

> The affiant also has spoken with Sgt. Jeffrey W. Hart of the Morganfield Police Department who also has information that Marijuana is trafficked out of this business and usually leaves the business in computer parts boxes.

Id. at 927.

Similar to the present case, the affidavit provided that the confidential informant was known to be credible and reliable and had provided accurate information in the past. The Sixth Circuit recognized that the affidavit contained little basis for the state court judge to assess independently the informant's credibility. Id. at 927. Despite this deficiency, the Sixth Circuit upheld the search warrant in Woosley finding that the warrant was supported by probable cause based upon the fact that (1) the tip "identified the contraband with great specificity and described its particular location with precision" and (2) that the trooper spoke with a local law enforcement officer who confirmed that he had received similar reports. While the corroboration of the confidential informant's information in Woosley is arguably similar to the corroboration undertaken by Trooper Winters in the present case, the difference between the affidavits is that in Woosley the confidential informant personally observed criminal activity at the place to be searched. According to the affidavit in the present case, the confidential informant observed first-hand "Tinker" Barnett purchase items to make or cook methamphetamine and observed "Bennett and Barnett 'cooking' methamphetamine in the recent past as late as this week." The affidavit, however, does not indicate where the confidential informant observed Bennett and Barnett cooking the methamphetamine. Unlike the affidavit in Woosley, the affidavit in the present case contains no detailed description of what the informant observed first-hand at the residence in question.

9

Given the lack of such personal observation by the confidential informant in the present case, Woosley is distinguishable and the Government's reliance on Woosley is misplaced.

For these reasons, the Court finds that probable cause did not exist for the issuance of the search warrant.

### D. Good Faith

Finding that the affidavit did not provide a sufficient basis for the issuance of the warrant, the issue then becomes whether the Leon good faith exception applies. United States v. Leon, 468 U.S. 897 (1984). The parties have not had the opportunity to address the good faith exception in light of the Court's decision. Accordingly, the Court will grant the Defendant's motion to continue the trial and give the parties an opportunity to brief this issue.

### E. Knock and Announce

Defendant alleges in his recitation of the facts in his supplemental motion to suppress that the search warrant was executed without the officers knocking or otherwise announcing their official duty or intentions to execute a warrant. There is not sufficient evidence in the record at this time for the Court to decide this issue. The parties may submit additional information regarding this issue when they file their briefs.

### Conclusion

For the reasons set forth, **IT IS HEREBY ORDERED** as follows:

1. The motion by Defendant to suppress statements [DN 27] is **denied as moot.**

2. The motion by Defendant to continue the trial [DN 41] is **granted.** The

Government indicated that it had no objection to the continuance. The trial scheduled for December 13, 2005, is **vacated**. The Court finds that the ends of justice served by the granting of the motion to continue outweigh the best interest of the public and the Defendant in a speedy trial.

    3. **No later than December 19, 2005,** the parties shall file simultaneous briefs regarding the issue of good faith. **No later than December 30, 2005**, the parties shall file simultaneous responses

cc: counsel of record